United States District Court
Southern District of Texas
**ENTERED**
December 23, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TALIA MARINO, | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:19–CV–00082 |
| ROYAL CARIBBEAN CRUISES LTD., | § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant Royal Caribbean Cruises Ltd.'s Opposed Motion to Compel Arbitration (the "Motion"). *See* Dkt. 12. Having considered the Motion, responsive briefing, and applicable law, I **RECOMMEND** that the Motion be **GRANTED.**

## BACKGROUND

Plaintiff Talia Marino ("Marino") is a United States citizen. Defendant Royal Caribbean Cruises Ltd. ("Royal Caribbean") is a Liberian corporation with its principal place of business in Miami, Florida. Royal Caribbean operates the *M/V Oasis of the Seas*, a cruise ship registered under the laws of the Bahamas that flies the flag of the Bahamas.

Royal Caribbean hired Marino in 2017 to work as an entertainer aboard the *M/V Oasis of the Seas*. Marino started work aboard the cruise ship on May 21, 2017. Her first

week aboard was devoted to rehearsal and orientation. Beginning May 28, 2017, she performed as the featured aerialist on board the ship.

Marino claims that on July 1, 2017, while suspended approximately 30 feet in the air during a performance rehearsal, she fell and landed suddenly and violently on the hard stage, injuring her back and lower extremities. At the time of the injury, the *M/V Oasis of the Seas* had just departed Cozumel, Mexico and was travelling in international waters.

### A.   THE EMPLOYMENT AGREEMENTS

In March, 2017, Royal Caribbean sent Marino a "Welcome Aboard" package to memorialize the terms of her anticipated employment with the cruise ship operator. The package included, among other things, a cover letter, a letter of intent, medical forms, and rules and regulations. These documents described Marino's job responsibilities, compensation, and accommodations aboard the ship. The letter of intent specified that Marino had to carry a valid passport and instructed her to refer to the company's website to obtain the ship's itinerary. There was no mention in the "Welcome Aboard" package of any arbitration provision.

On May 21, 2017, Marino reported to the *M/V Oasis of the Seas* in Port Canaveral, Florida to board the ship for a week of rehearsal and orientation. On that day, she executed a six-page Sign On Employment Agreement. This agreement specified, among other things, her compensation, work-week, vacation pay, medical benefits, and further described the ship's rules and regulations applicable to employees. Important to the pending Motion, almost one full page of the Sign On Employment Agreement contains a section titled "Arbitration Procedure." It states, in part:

2

> All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleaded or styled, and whether asserted against the Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards . . . .

Dkt. 12-2 at 5. The arbitration clause also provides that there will be a single arbitrator appointed by agreement of the parties. If the parties cannot come to an agreement, the arbitrator will be chosen in accordance with the International Center for Dispute Resolution rules. The arbitration will take place in Miami, Florida; Nassau, Bahamas; Oslo, Norway; Manila, Philippines; or a location agreed upon by Royal Caribbean and the seafarer's union or representative. Finally, the employment contract states that "[t]he laws of the Bahamas govern over any dispute" between the parties. Dkt. 12-2 at 5.

The May 21, 2017 Sign On Employment Agreement specified a projected end date of May 28, 2017, which corresponded with the last day of orientation. On June 6, 2017, Marino went ahead and signed another Sign On Employment Agreement, which provided a projected end date in the winter of 2018 and updated her payment details to reflect the length of the assignment. In all other respects, including the arbitration provision, the June 6, 2017 Sign On Employment Agreement was identical to the one Marino previously signed.

During Marino's eight-months as an entertainer on the *M/V Oasis of the Seas*, the ship traveled through the Caribbean, spending about 79 percent of its time in foreign ports or traveling in international waters.

**B.      PROCEDURAL HISTORY**

Marino filed this lawsuit in the United States District Court of the Southern District of Texas (Galveston Division), alleging Jones Act negligence, unseaworthiness, and maintenance and cure. Royal Caribbean has moved to compel arbitration pursuant to the arbitration provision contained in the June 6, 2017 Sign On Employment Agreement. It is Royal Caribbean's contention that The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("Convention"), implemented by the United States through 9 U.S.C. §§ 201–208, ties my hands and requires me to send this case to arbitration.

## ANALYSIS

**A.      THE ARBITRATION AGREEMENT IS GOVERNED BY THE CONVENTION**

The Convention is an international treaty that requires courts of contracting states to give effect to private agreements to arbitrate and to recognize and enforce arbitration awards made in other contracting states. As the Supreme Court has observed:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). As of today, there are 161 signatories to the Convention, including the United States. When an arbitration provision

falls under the Convention "the Convention requires district courts to order arbitration." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985).[1]

At the outset of my legal analysis, I am mindful that there is "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As one district court noted:

> To say that it is the public policy of the United States and the Fifth Circuit to enforce contractually agreed-upon arbitration provisions would be an understatement. It is hard to imagine a topic in recent years in which the Fifth Circuit has written more frequently and more consistently. Its statements are clear and concise. If there is an agreement in writing to arbitrate, it is the public policy of the federal courts to enforce that provision.

*Ensco Offshore Co. v. Titan Marine LLC*, 370 F. Supp. 2d 594, 597 (S.D. Tex. 2005). The strong policy in favor of arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). That being said, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 297 (2010).

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). A district court should compel arbitration

---

[1] Although Federal Arbitration Act ("FAA") is oftentimes the vehicle utilized to enforce arbitration clauses in maritime transactions, the statute is not applicable here because it specifically excludes "contracts of employment of seamen." 9 U.S.C. §§ 1, 2. Unlike the FAA, the Convention does not "recognize an exception for seaman employment contracts." *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 274 (5th Cir. 2002).

5

under the Convention if: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and, (4) a party to the agreement is not an American citizen or, if both parties are American citizens, the relationship between the parties envisages performance or enforcement abroad or has some other reasonable relation with one or more foreign states. *See id*. at 339–40. Once these four requirements are met, the Convention requires me to order arbitration, "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Id*. at 339 (quotation omitted).

### 1. Element 1 – Written Agreement to Arbitrate

The first requirement—an agreement in writing to arbitrate the dispute—is easily met. The June 6, 2017 Sign On Employment Agreement contains an arbitration clause requiring Marino and Royal Caribbean to submit "[a]ll grievances or any other dispute whatsoever . . . relating to or in any way connected with the Seafarer's service . . . including but not limited to claims for personal injury/disability or death . . . [to] mandatory binding arbitration." Dkt. 12-2 at 5.

Marino argues that this arbitration clause is invalid because while there are multiple documents governing Marino's employment relationship with Royal Caribbean, just one of those documents contains an arbitration provision, thus supposedly sending mixed messages concerning the appropriateness of arbitration. In pursuing this argument, Marino cites to a number of cases in which courts refused to enforce arbitration clauses that conflicted with other arbitration clauses between the same parties.

6

*See, e.g., Ragab v. Howard,* 841 F.3d 1134, 1138 (10th Cir. 2016) ("[T]he conflicting details in the multiple arbitration provisions indicate that there was no meeting of the minds with respect to arbitration."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab. Litig.,* 838 F. Supp. 2d 967, 992 (C.D. Cal. 2012) ("[T]he conflicting arbitration provisions are not only ambiguous, they are fundamentally incompatible."). Those cases are far from analogous to this case.[2] Here, it is undisputed that there was only one arbitration provision in effect between Marino and Royal Caribbean at the time of Marino's alleged injury. That arbitration provision does not conflict with any other agreement in place between the parties. Sure, some of the other documents Marino signed that also cover the employment relationship with Royal Caribbean are silent when it comes to arbitration, but that does not magically invalidate the Sign On Employment Agreement's arbitration provision. Included in the "Welcome Aboard" package Marino received in March 2017 was a letter of intent, which she signed, explaining:

> As with all shipboard employees at [Royal Caribbean], your formal contract shall commence once you have executed a Sign On Employment

---

[2] Marino also relies on *Dental Associates, P.C. v. American Dental Partners of Michigan, LLC*, 520 F. App'x 349 (6th Cir. 2013), but that case is inapposite. In *Dental Associates*, the parties entered into two separate contracts: a Service Agreement that did not contain an arbitration provision, and an Asset Purchase Agreement that did contain an arbitration clause. A dispute arose under the Service Agreement. Keeping in mind that "[w]here there are multiple contracts between the parties, a dispute is arbitrable pursuant to the arbitration clause in a related contract if the arbitration clause is part of an umbrella agreement governing the parties' overall relationship," the Sixth Circuit had to determine whether the arbitration provision in the Asset Purchase Agreement governed the parties' overall relationship and, thus, required the Service Agreement dispute to be arbitrated. *Id.* at 352 (internal quotation marks and citation omitted). That situation is radically different from the case currently before me. Here, unlike in *Dental Associates*, Marino's dispute arises out of the employment relationship governed by the Sign On Employment Agreement and the same agreement also contains an arbitration provision.

> Agreement onboard your designated vessel. This letter stipulates the particular roles and responsibilities which shall be entailed with your onboard employment. In the event that the terms of this letter conflict with your Sign On Employment Agreement, the terms of the Sign on Employment Agreement shall prevail.

Dkt. 13-3 at 3. This language clearly establishes that the Sign On Employment Agreement is the controlling document. Thus, even if the arbitration clause contained in the Sign On Employment Agreement conflicted with another employment-related document (which it does not), the Sign On Employment Agreement's arbitration clause would still rule the day.

To accept Marino's argument, I would have to believe that a written employment contract containing a broad arbitration provision, negotiated at arms-length and voluntarily entered into by an employer and employee, is rendered unenforceable unless every single document exchanged between the parties also contained the same arbitration language. With common sense guiding my way, I am unwilling to embrace that position.

My conclusion: Marino and Royal Caribbean have a valid, written agreement to arbitrate Marino's personal injury claims arising out of her employment on the cruise ship. Element one is confirmed.

    **2.**    **Element 2 – Arbitration in a Convention Signatory Nation**

The second element required to compel arbitration under the Convention is that the arbitration agreement at issue must provide for arbitration in a Convention signatory nation. The arbitration clause provides for arbitration in one of four nations: the United States, Bahamas, Norway, or the Philippines. Each of these nations is a signatory to the Convention. *See Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*,

783 F.3d 1010, 1015 (5th Cir. 2015) ("Both forums in this case, the United States and the Philippines, are signatories to the Convention."); *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011) (noting that the "Bahamas . . . [is a] signator[y] to the Convention"); *Hill v. Assuranceforeningen Skuld (Gjensidig)*, No. CV 15-00025, 2017 WL 930060, at *2 n.8 (D. Guam Mar. 9, 2017) ("Both the United States and Norway are signatories to the . . . Convention."). Therefore, this element is established.

### 3. Element 3 – Commercial Legal Relationship

To enforce an arbitration agreement under the Convention, the third prong that must be established is that the arbitration agreement must arise "out of a commercial legal relationship." *Freudensprung*, 379 F.3d at 339 (quotation marks and citation omitted). The Fifth Circuit has held "that an employment contract is 'commercial.'" *Francisco*, 293 F.3d at 274. Because the arbitration agreement is found in an employment contract, the arbitration agreement necessarily arises out of a commercial legal relationship. The third element is satisfied.

### 4. Element 4 – Relationship Envisages Performance Abroad

I now turn to the fourth requirement. An agreement between citizens of the United States falls under the Convention if it "envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *Freudensprung*, 379 F.3d at 340 (quoting 9 U.S.C. § 202).

Royal Caribbean directs my attention to two cases which involve almost identical fact patterns as the case at hand. Both involve Royal Caribbean entertainers who sought to avoid arbitration after being injured on cruise ships travelling to or from a foreign

9

country. In the first case, *Alberts v. Royal Caribbean Cruises, Ltd.*, the lead trumpeter on the *M/V Oasis of the Seas* sued Royal Caribbean for failing to provide him adequate medical care while he was on the ship. 834 F.3d 1202, 1203 (11th Cir. 2016). Royal Caribbean moved to compel arbitration under the same arbitration clause present here. The arbitrability issue came down to the fourth element:

> The only issue before us is whether Alberts's contract "envisages performance . . . abroad." Alberts argues that the word abroad means "in one or more foreign states" and that because he worked only in international waters, his contract did not envisage performance abroad. Royal Caribbean argues that abroad means anywhere "outside a country," so performance on international waters is performance abroad.

*Id.* at 1204 (citation omitted). The Eleventh Circuit refused to adopt the definition provided by Royal Caribbean or the definition provided by the ship musician.

> The parties' definitions are . . . inconsistent with standard usage in this context. Royal Caribbean's proposed definition—beyond the bounds of a country—might include a voyage from Miami to New Orleans, which an ordinary speaker would not consider to be abroad. And Alberts's proposed definition—in a foreign country—would not include a voyage between two foreign states, something an ordinary speaker would consider to be abroad.

*Id.* at 1205. Instead, the Eleventh Circuit crafted its own definition. Consistent with standard usage of the term "abroad," the *Alberts* court concluded "that performance abroad includes a seaman's work traveling to or from a foreign country." *Id.* at 1204. Applying that standard, the Eleventh Circuit held that the musician's "contract envisaged performance abroad because he worked on a cruise ship that traveled in international waters to foreign ports. Because his contract envisaged performance abroad, the arbitration clause is enforceable under the Convention." *Id.* at 1205.

The second case is *Dahir v. Royal Caribbean Cruises Ltd.*, 275 F. Supp. 3d 826 (S.D. Tex. 2017). In *Dahir*, a band leader and guitar player on another Royal Caribbean ship, the *M/V Radiance*, sustained personal injuries when his cabin's bunk bed broke. At the time of the injury, the *M/V Radiance* was in route from Vancouver, Canada to Hilo, Hawaii. The performer sued Royal Caribbean for monetary damages, and the cruise shop operator moved to compel arbitration. Noting that "*Alberts* thus provides persuasive authority for the proposition that the term 'abroad' as applied to the Convention encompasses international waters as well as foreign states," the district court compelled arbitration in accordance with the Convention. *Id.* at 832. In language that applies to the case currently before me, District Judge George C. Hanks, Jr. stated:

> [Plaintiff] signed an employment contract for services he performed upon a ship traveling through international waters to ports at foreign states. He was injured after departing from a foreign state and while traveling through international waters to an ultimate destination at a different foreign state. . . . The Court finds that the parties envisaged performance abroad.

*Id.*

Faced with the holdings of *Alberts* and *Dahir*, Marino argues that those courts simply got it wrong. Marino posits that I should only enforce an arbitration agreement between United States citizens under the Convention if "some foreign nation has a significant interest in the matter" or there is a "clear foreign interest" involved. Dkt. 13 at 19. Marino asserts that defining abroad as "in or traveling to or from a foreign state" conflicts with the Fifth Circuit's reasoning that "the Convention may apply in such cases provided that there is a reasonable relation between the parties' commercial relationship and some important foreign element." *Freudensprung*, 379 F.3d at 340 (quotation marks

11

and citations omitted). I respectfully disagree. A finding that Marino's employment agreement envisaged performance abroad because he worked on a cruise ship that traveled to and from foreign ports is fully consistent with Fifth Circuit precedent. As the Eleventh Circuit in *Alberts* noted: "under our definition of abroad—in or traveling to or from a foreign state—performance abroad *does* have a reasonable relation with a foreign state." 834 F.3d at 1205. Stated differently, and to borrow the words of the Fifth Circuit, a seaman's work on a cruise ship that travels to or from a foreign country provides "a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." *Freudensprung*, 379 F.3d at 341. Because Marino's employment contract envisaged performance abroad, the arbitration clause satisfies the fourth prong under the Convention.

To recap, Royal Caribbean has demonstrated that all four elements required to compel arbitration under the Convention exist in this case.

**B.   MARINO'S PUBLIC POLICY DEFENSE IS PREMATURE**

The four factors required for the Convention are satisfied in this case and, as a result, I am required to compel arbitration *unless* the arbitration agreement is "null and void, inoperative or incapable of being performed." Convention, art. II(3).

The limited scope of the Convention's Article II null and void clause encompasses "only those [defenses]—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2009) (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 80 (1st Cir. 2000)). Marino makes no attempt to argue the arbitration agreement is a product of

fraud, mistake, duress, or waiver. Instead, Marino complains that forcing her to go to arbitration would violate public policy because it deprives her of statutory rights as a United States citizen under the Jones Act. The arbitration agreement requires Marino to arbitrate her dispute with Royal Caribbean under Bahamian law.

Marino's public policy argument is premature. Article V of the Convention lists seven defenses that courts are to consider after the arbitration is held in determining whether to recognize and enforce an arbitral award. One of those Article V defenses is the "public policy" defense, which allows a court to refuse recognition and enforcement of an award if "recognition and enforcement of the award would be contrary to the public policy" of the country in which recognition and enforcement are sought. Convention, art. V(2). Importantly, Article V's public policy defense is not available at the initial stage of proceedings when the court considers whether to compel the parties to arbitrate. Instead, "the Convention itself allows a public policy defense *after* arbitration and authorizes the court to refuse to enforce 'an arbitral award' if it is contrary to public policy." *Simon v. Princess Cruise Lines, Ltd.*, No. G-13-0444, 2014 WL 12617820, at *3 (S.D. Tex. May 19, 2014) (quoting Convention, art. V(2)). Raising an Article V public policy defense prior to the conclusion of the arbitration proceeding is improper and should not be allowed. *See Vera v. Cruises Ships Catering and Servs. Int'l*, No. 14-12494, 594 F. App'x. 963, 967 (11th Cir. 2014) ("[I]f Plaintiff wishes to pursue a public policy defense, he can do so only at a proceeding to enforce the arbitration award (otherwise known as the 'award-enforcement' stage), and an award-enforcement proceeding necessarily occurs after the arbitration proceeding has concluded."); *Lindo*, 652 F.3d at 1281 ("In the two

13

instances the Supreme Court has quoted the language of Article V's public policy defense, it has indicated that it is to be applied at the [award-enforcement] stage, not at the arbitration-enforcement stage."); *Simon,* 2014 WL 12617820, at *3 ("Plaintiff may not assert public policy defenses to the Arbitration Agreement covered by the Convention at this [arbitration-enforcement] stage and must, instead, wait to assert those arguments when challenging the arbitrator's decision following arbitration.").

Marino argues that I have authority to refuse to enforce the arbitration clause on public policy grounds at the arbitration-enforcement stage under the prospective waiver doctrine. In support of her argument, she cites *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, which explains that if the "choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies . . . , we would have little hesitation in condemning the agreement as against public policy." 473 U.S. at 637 n.19. A more recent Supreme Court case has further narrowed the scope of the prospective waiver doctrine that arose from the *Mitsubishi* footnote. In *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, the Supreme Court held that an arbitration agreement should not be enforced if "the choice-of-forum and choice-of-law clauses operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies" and there is "no subsequent opportunity for review." 515 U.S. 528, 540 (1995) (internal quotation marks and citation omitted). As explained above, there is a subsequent opportunity for review in arbitration proceedings that fall under the Convention. *See Lindo*, 652 F.3d at 1269 ("[E]ven if a contract expressly says that foreign law governs, as in *Vimar*, courts should not invalidate an arbitration agreement at

14

the arbitration-enforcement stage on the basis of speculation about what the arbitrator will do, as there will be a later opportunity to review any arbitral award."); 9 U.S.C. § 207. At the award-enforcement stage, Marino will have an opportunity to raise her public policy arguments. Therefore, the prospective waiver doctrine does not apply. Accordingly, I will follow the Convention and not consider the public policy arguments at this stage of the proceedings.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Motion be **GRANTED.**

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 23rd day of December, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE